UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ZEPPELIN SYSTEMS USA, INC.

    Plaintiff,

-against-

PYROLYX USA INDIANA, LLC

    Defendant.

Civil Action No. 19-cv-11222

**MEMORANDUM DECISION AND ORDER DENYING MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

McMahon, C.J.:

    Plaintiff Zeppelin Systems USA, Inc. ("Zeppelin") brings this action against Defendant, Pyrolyx USA Indiana, LLC ("Pyrolyx"). Plaintiff's claim arises from a project to construct a new Recovered Carbon Black facility in Terre Haute, Indiana ("Indiana Project"). Plaintiff alleges that Pyrolyx has caused millions of dollars in losses to Zeppelin, both in contractually-mandated payments wrongfully withheld by Pyrolyx, and added costs incurred by Zeppelin to mitigate Pyrolyx's mismanagement. Zeppelin seeks to recover its overdue money, with contractual interest, damages suffered beyond the parties' agreement, and statutorily-prescribed attorneys' fees expended to pursue its legal remedies against Pyrolyx.

    Currently before the court is Pyrolyx's motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). For the reasons set forth below, this motion to dismiss is denied.

## I. Factual Background

### a. Parties

Zeppelin is a Florida corporation with its principal place of business located in Odessa, Florida. (Complaint, ECF No. 1 ("Compl.") ¶ 4.) Zeppelin specializes in, among other things, the supply and installation of customized mechanical equipment for petrochemical, plastic processing, recycling, and carbon black facilities in the United States and globally. (Compl. ¶ 5.)

Pyrolyx is an Indiana limited liability company with its principal place of business located in Terre Haute, Indiana. (Compl. ¶ 6.) Pyrolyx is a wholly-owned subsidiary of Pyrolyx USA, Inc. ("Pyrolyx USA"), an Indiana corporation with its principal place of business in Wilmington, Delaware, which was formed to pursue the Indiana Project and operate the completed facility. (Compl. ¶ 11.) Pyrolyx USA is a wholly-owned subsidiary of Pyrolyx AG, a German corporation traded on the Frankfurt Stock Exchange and Australian Securities Exchange. (*Id.*)

### b. Formation of the Contract

On February 23, 2017, Pyrolyx was established as a single-purpose entity tasked with funding and managing the Indiana Project, operating the completed facility, and expanding Pyrolyx AG's commercial sale of recovered carbon black in the United States. (Compl. ¶¶ 11-12.) Recovered carbon black is a sustainable reinforcing agent used in the manufacture of tires, conveyor belts, hoses, gaskets, seals, roofing materials, and other rubber projects. (Compl. ¶ 13.) Pyrolyx capitalized the Indiana Project in part through an initial public offering on the Australian Securities Exchange, and in part through a loan from the city of Terre Haute, Indiana. (Compl. ¶14.)

In early 2017, Pyrolyx asked Zeppelin to provide a technical and commercial proposal to engineer, supply, and install certain pyrolysis equipment for the Indiana Project. (Compl. ¶ 17.) On or about May 18, 2017, Zeppelin issued Pyrolyx a technical proposal outlining the scope of

mechanical equipment, materials, and services that Zeppelin could offer ("Technical Proposal"). (Compl. ¶ 18.) The Technical Proposal expressly stated that Zeppelin was limited to delivering the specific equipment identified therein, but excluded all other engineering services, installation, and other scopes of trade work, which would remain Pyrolyx's sole and exclusive responsibility. (Compl. ¶ 19.)

During May and June 2017, Pyrolyx and Zeppelin engaged in discussions about Zeppelin's anticipated role in the Indiana Project, the price of Zeppelin's services, and the terms, conditions, and assumptions that would govern their relationship. (Compl. ¶ 20.) On or about June 6, 2017, Pyrolyx and Zeppelin entered into Contract No. 170124.00, naming Zeppelin as "Seller" and Pyrolyx as "Buyer" of the mechanical "Goods and Services" identified in the Technical Proposal. (Compl. ¶ 33.) The parties' contract included a forum selection clause and a choice-of-law provision, which provides in part:

> 18.1 All aspects of this Contract shall be governed and interpreted by the law of the State of New York, except for any conflicts-of-laws authority that would apply another jurisdiction's laws or interpretation.
>
> 18.3 Venue for any claims of disputes under this Agreement shall exclusively be the Southern District of New York.

(Compl. Ex. 1. ¶¶ 18.1-18.3.)

### c. Summary of Allegations

Plaintiff alleges that from the outset of the Indiana Project, Pyrolyx ordered costly changes to the work, failed to provide engineering criteria necessary to fulfill the contracted scope of work, and refused to cooperate with Zeppelin during critical stages of the construction and commission work. (Compl. ¶ 69.) As a result, Plaintiff claims that Pyrolyx has caused millions of dollars in losses to Zeppelin, both in contractually-mandated payments wrongfully withheld by Pyrolyx, and

3

added costs incurred by Zeppelin to mitigate Pyrolyx's mismanagement. (Compl. ¶ 162.) Moreover, Plaintiff alleges that Zeppelin has repeatedly misappropriate information and technology that comprises Zeppelin's intellectual property. (Compl. ¶ 172.)

On December 6, 2019, Zeppelin concurrently filed two civil actions: this breach-of-contract action, and the Indiana Lien Action that seeks to foreclose on the recovered carbon black facility. (*See* Compl. ¶ 164; Def.'s Mem. in Supp. of Mot., ECF No. 24, Ex. 1. ¶ 137) The complaint filed in the Indiana Lien Action ("Indiana Complaint") specifically requests proceeds from the foreclosure of the facility to satisfy the outstanding "Contract Balance" of $5,585,385.70, the same amount claimed in this action. (*Id.*)

In response to this action, Pyrolyx filed a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). (Def.'s Mot. Dismiss, ECF No. 21.) According to Pyrolyx, Indiana Code § 32-28-3-17 voids Article 18.3 of the contract to the extent it "requires litigation, arbitration, or other dispute resolution process on the contract [to] occur in another state." (ECF No. 24 at p. 2.) Pyrolyx also cites N.Y. Gen Bus. Law 35-E § 757(1), a New York statute containing a similar provision. *Id.* Moreover, Pyrolyx argues that even if the forum selection clause is enforceable, this Action should still be dismissed under the *Colorado River* abstention doctrine. (ECF No. 24 at p. 8.)

## II. Standard of Review

In general, when a party objects to a court's exercise of personal jurisdiction under Rule 12(b)(2), the non-moving party bears the burden of demonstrating contacts with the forum state sufficient to justify the assertion of personal jurisdiction. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). But here, the contract contains a clause selecting the Southern District of New York as the forum for disputes. (Compl. Ex. 1. ¶¶ 18.3.) In actions involving forum selection

clauses, the non-moving party need not demonstrate that the defendant's contacts with the forum state are sufficient because the parties have agreed in advance to confer personal jurisdiction on a particular court. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985) (stating that enforcement of a forum selection clause in a freely negotiated instrument between commercial parties does not offend the due process clause); *Nat'l Equip. Rental Ltd. v. Szukhent*, 375 U.S. 311, 316 (1964) ("[P]arties to a contract may agree in advance to submit to the jurisdiction of a given court, to permit notice to be served by the opposing party, or even to waive notice altogether."). Consequently, where there is a forum selection clause, the only personal jurisdiction issue is the enforceability and effect of the clause.

**III. Discussion**

    **a. Validity of Forum Selection Clauses**

Where, as here, a contract contains both a choice-of-law and a choice-of-forum clause, the overriding framework governing the effect of forum selection clauses in federal courts is drawn from federal law, rather than the body of law specified in the choice-of-law clause. *Martinez v. Bloomberg LP*, 740 F.3d 211, 217 (2d Cir. 2014). Federal law employs a four-part framework to determine the validity of a forum selection clause: (1) "whether the clause was reasonably communicated to the party resisting enforcement"; (2) whether the clause is "mandatory or permissive," i.e., . . . "whether the parties are required to bring any dispute to the designated forum or simply permitted to do so"; (3) "whether the claims and parties involved in the suit are subject to the forum selection clause"; (4) "whether enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching". *Phillips v. Audio Active, Ltd.*, 494 F.3d 378, 383-84 (2d Cir. 2007) (internal quotations omitted).

Within this four-part framework, the substantive law identified in the choice-of-law clause governs the interpretive questions posed by parts two and three of the analysis, while federal law governs the enforceability of the forum-selection clause under step four. *Martinez*, 740 F.3d at 217-218. This approach balances the contracting parties' legitimate expectations with significant federal policies, such as the presumptive enforceability of forum selection clauses and "the traditional divide between procedural and substantive rules developed under *Erie R.R.. v. Tompkins*, 304 U.S. 64 (1938). *Martinez*, 740 F.3d at 220. "Questions of venue and the enforcement of forum selection clauses are essentially procedural, rather than substantive, in nature," and therefore should be governed by federal law. *Jones v. Weibrecht*, 901 F.2d 17, 19 (2d Cir. 1990) (per curiam).

Moreover, forum selection clauses enjoy a presumption of enforceability under federal law. *See Phillips*, 494 F.3d at 383-84 ("If the forum clause was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute, it is presumptively enforceable.") In the absence of a strong countervailing public policy justifying the invalidation of a forum selection clause, courts should do no "more than give effect to the legitimate expectations of the parties, manifested in their freely negotiated agreement." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12 (1972).

### b. The Forum Selection Clause is Enforceable

Unequivocally, the first three factors of the framework point to the validity of the forum selection clause; (1) the clause was expressly communicated to the parties when they signed the Contract; (2) the clause is mandatory, providing that venue "shall" lie exclusively in this District; (3) Zeppelin's claims in this suit arise under the Contract and are therefore subject to the clause.

Pyrolyx consented to personal jurisdiction when it agreed to the forum selection clause contained in the contract. However, now that Zeppelin has filed suit in the agreed upon forum, Pyrolyx argues that the States of Indiana and New York void any agreement requiring parties to litigate construction-related disputes outside of the state. This contention cuts to the fourth factor of the framework; whether "enforcement would be unreasonable or unjust . . . ." *Phillips*, 494 F.3d at 384 (quoting *M/S Bremen*, 407 U.S. at 15). Since enforcement of the forum selection clause may be found unreasonable if its application "would contravene a strong public policy of the forum [state] . . . whether declared by statute or by judicial decision," *M/S Bremen*, 407 U.S. at 15; this court must consider whether Indiana or New York's disapproval of out-of-state forum selection clauses in construction contracts is a strong public policy of the forum state and, if so, whether federal courts should defer to that policy.

Once again, federal law governs the enforceability of forum-selection clauses. *Martinez*, 740 F.3d 211 at 217. Questions of venue are procedural, rather than substantive, and insofar as the Indiana Code § 32-28-3-17 would purport to impose Indiana procedural rules regarding the enforcement of forum selection clauses on a federal court, it is preempted by federal law. *See Am. Dredging Co. v. Miller*, 510 U.S. 443, 453 (1994) ("[V]enue is a matter that goes to process rather than substantive rights . . . ."). Moreover, Indiana is not the forum state. Although the construction project occurred in Indiana, Zeppelin is a Florida corporation and filed this action in New York. Thus, Indiana's disapproval of out-of-state forum selection clauses is not relevant in determining if enforcement of the forum selection clause "would contravene a strong public policy of *the forum* . . . ." *M/S Bremen* 407 U.S. at 15 (emphasis added).

As it turns out, New York, the forum state, has a statute similar to Indiana Code § 32-28-3-17, one that voids forum selection clauses in construction contracts:

7

> The following provisions of construction contracts shall be void and unenforceable:
> 1. A provision, covenant, clause or understanding in, collateral to or affecting a construction contract, with the exception of a contract with a material supplier, that makes the contract subject to the laws of another state or that requires any litigation, arbitration or other dispute resolution proceeding arising from the contract to be conducted in another state.

N.Y. Gen Bus. Law 35-E § 757(1).

However, unlike Indiana Code § 32-28-3-17, the New York statute provides an exception for a construction contract with a material supplier, defined as:

> [A]ny person, firm, partnership, corporation, company, association, or other organization or entity, or any combination thereof, which is party to a contract with an owner, contractor or subcontractor, for the provision of construction materials and/or equipment necessary to the completion of a construction contract.

Here, Zeppelin falls within the definition of a 'material supplier'. Zeppelin's Technical Proposal expressly stated that Zeppelin was limited to delivering the specific equipment identified therein, but excluded all other engineering services, installation, and other scopes of trade work, which would remain Pyrolyx's sole and exclusive responsibility. (Compl. ¶ 19.) Among other things, the following activities were expressly *excluded* from Zeppelin's scope of work at the Project: (i) civil or any types of construction work; (ii) concrete foundations: (iii) loading and unloading materials; (iv) masonry work; (v) wire racks; (vi) local disconnects; (vii) fire protection; (viii) sprinkler system; (ix) control system; and (x) anything else not specifically listed in scope of supply. (Compl. ¶ 60.) New York public policy does not disavow out-of-state forum selection clauses in construction contracts with material suppliers and since Zeppelin qualifies as a material supplier, the New York statute is inapposite.

Furthermore, the prohibition of out-of-state forum selection clauses in construction contracts is not a "strong public policy" that warrants federal deference and so should be permitted to override the Supreme Court's embrace of such clauses in *M/S Bermen* and its progeny. *See Stewart*

8

*Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30 (1988) (citing *Burlington N.R. Co. v. Woods*, 480 U.S. 1, 7 (1987)). State reluctance to recognize and enforce forum selection clauses was specifically addressed and countered by the Supreme Court's holding in *M/S Bremen*, where the Court acknowledged that "[m]any courts … have declined to enforce [forum selection] clauses on the ground that they were 'contrary to public policy' or that their effect was to 'oust the jurisdiction' of the court" — a notion the court found to be "vestigial fiction." 407 U.S. at 9, 12.

### c. Colorado River Abstention Doctrine

Pyrolyx argues that, even if the forum selection clause is enforceable, this action should still be dismissed under the *Colorado River* abstention doctrine. "Generally, as between state and federal courts, the rule is that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the [f]ederal court having jurisdiction.'" *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (quoting *McClellan v. Carland*, 217 U.S. 268, 282 (1910)) (internal quotation marks omitted). Abstention from exercising federal jurisdiction "is the exception, not the rule." *Id.* at 813. In *Colorado River*, the Supreme Court explained that "[t]he doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, *is an extraordinary and narrow exception* to the duty of a District Court to adjudicate a controversy properly before it." *Id.* (quoting *County of Allegheny v. Frank Mashuda Co*., 360 U.S. 185, 188-89 (1959)) (emphasis added) (internal quotation marks omitted).

In *Colorado River*, the Court held that "in situations involving the contemporaneous exercise of concurrent jurisdiction," a federal court, in "exceptional" circumstances, may abstain from exercising jurisdiction when parallel state-court litigation could result in "comprehensive disposition of litigation" and abstention would conserve judicial resources. *Id.* at 813, 817-18

(internal brackets and quotation marks omitted). "[T]he decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors . . . as they apply in a given case." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983).

In evaluating whether *Colorado River* abstention is appropriate, a federal district court must consider six factors, "with the balance heavily weighted in favor of the exercise of jurisdiction." *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012) (quoting *Moses H. Cone*, 460 U.S. at 16) (internal quotation marks omitted). These six factors are:

> (1) whether the controversy involves a res over which one of the courts has assumed jurisdiction; (2) whether the federal forum is less inconvenient than the other for the parties; (3) whether staying or dismissing the federal action will avoid piecemeal litigation; (4) the order in which the actions were filed, and whether proceedings have advanced more in one forum than in the other; (5) whether federal law provides the rule of decision; and (6) whether the state procedures are adequate to protect the plaintiff's federal rights.

*Woodford v. Cmty. Action Agency of Greene County, Inc.*, 239 F.3d 517, 522 (2d Cir. 2001). The Supreme Court has explained that none of these factors alone is necessarily determinative, but, instead, a federal district court must engage in a "carefully considered judgment[,] taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise . . . Only the clearest of justifications will warrant dismissal." *Colorado River*, 424 U.S. at 818-19 (citation omitted); *see also Moses H. Cone*, 460 U.S. at 16 (explaining that the "weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case."). Moreover, "[w]here a *Colorado River* factor is facially neutral, that "is a basis for retaining jurisdiction, not for yielding it." *Niagara Mohawk Power Corp.*, 673 F.3d at 101 (quoting *Woodford*, 239 F.3d at 522).

Before engaging in the six-factor analysis, a court must make a threshold determination that the federal and state court cases are "parallel." *Dittmer v. County of Suffolk*, 146 F.3d 113, 118 (2d Cir. 1998) ("[A] finding that the concurrent proceedings are 'parallel' is a necessary prerequisite to abstention under *Colorado River*."). Proceedings are parallel for abstention purposes where "substantially the same parties are contemporaneously litigating substantially the same issue in another forum." *Niagara Mohawk Power Corp.*, 673 F, 3d at 100 (quotation marks omitted).

"Complete identity of parties and claims is not required; the parallel litigation requirement is satisfied when the main issue in the case is the subject of already pending litigation." *GBA Contracting Corp. v. Fid. & Deposit Co. of Md.*, 2001 WL 11060, at *1 (S.D.N.Y Jan. 3, 2001); *see also Shields v. Murdoch*, 891 F. Supp. 2d 567, 577 (S.D.N.Y 2012) ("Perfect symmetry of parties and issues in not required." (quotation marks omitted)).

### i. Parallel Actions

Here, the actions are parallel for purposes of the *Colorado River* abstention doctrine. Both actions involve "substantially the same parties." *Dittmer*, 146 F.3d at 118. Although Plaintiff has named as defendants to the Indiana Lien Action three additional companies that have easements or other encumbrances on the real property owned by Pyrolyx, both actions have Zeppelin and Pyrolyx litigating against each other with the same interests.

Moreover, the two proceedings involve "substantially the same issue[s]." *Id.* Contrary to Plaintiff's claims that the Indiana Lien Action does not seek overlapping relief, the Indiana Complaint specifically requests proceeds from the foreclosure be used to satisfy the outstanding "Contract Balance" of $5,585,385.70, the exact amount claimed in this action. (See Compl. ¶ 164; ECF No. 24, Ex. 1. ¶ 137.) Even though Plaintiff seeks additional sums, as well as injunctive relief, in this court, the underlying events for both this action and enforcement of the mechanic's lien are

identical and the resolution of both actions depend on the same questions of breach of contract. *Id.* Thus, the fact that the Plaintiff seeks additional recovery in this court does not defeat parallelism. *See Phillips v. Citibank, N.A.*, 252 F. Supp. 3d 289, 296 (S.D.N.Y. 2017); *see also Stahl York Ave. Co., LLC v. City of New York*, 2015 WL 2445071, at *9 (S.D.N.Y. May 21, 2015) ("While the forms of relief sought by plaintiff in this case and the state action are not perfectly coextensive—here, [plaintiff] seeks money damages in addition to injunctive and declaratory relief—the cases are undoubtedly parallel for the purposes of the *Colorado River* abstention doctrine.")

ii. **The Assumption of Jurisdiction over the Res**

Here, only the Indiana Lien Action involves a *res*, over which the Indiana state court has jurisdiction. However, the Second Circuit has held that federal district courts may adjudicate matters indirectly related to the state's exercise of *in rem* jurisdiction over a piece of property in a mechanic's lien foreclosure, as long as "the final judgment does not undertake to interfere with the state court's possession save to the extent that the state court is bound by the judgment to recognize the right adjudicated by the federal court." *United States v. Certified Indus., Inc.*, 361 F.2d 857, 860 (2d Cir. 1966) (quoting *Markham v. Allen*, 326 U.S. 490, 494 (1946)).

Even though the claims here remain inextricably linked with the issues of beach-of-contract pending before the Indiana Court, the damages requested do not independently implicate a *res* and none of the causes of action before this court is a proceeding *in rem*. (Compl. ¶ 180.) Jurisdiction over Plaintiff's claims is constitutionally founded on diversity of citizenship; the amount in controversy is exceeded by a substantial margin; and as a purely technical matter, no judgment of this Court on either Zeppelin's claims for damages or injunctive relief will affect the state court's ability to dispose of the *res*. Thus, this factor weighs against abstention.

### iii. The Inconvenience of the Federal Forum

Pyrolyx contends that Indiana State Court is the more convenient forum since the parties are either located in Indiana or have performed the services in Indiana, and the materials, documents and witnesses are to a large extent located in Indiana. (ECF No. 24 at p. 11.) There are no witnesses or materials relevant to the dispute located in New York and none of the services provided under the Contract were performed in New York. *Id.*

However, the bargained-for forum reflects the parties' legitimate commercial interests, which this Court will not nullify based on the existence of an allegedly more convenient forum. Relying on *Atlantic Marine*, this Court has consistently declined to address private-interest factors alleged to supersede the parties bargained for mandatory forum in their contract:

> When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation. A court accordingly must deem the private-interest factors to weight entirely in favor of the preselected forum. As we have explained in a different but 'instructive' context … [w]hatever 'inconvenience' the parties would suffer by being forced to litigate in the contractual forum as they agreed to do was clearly foreseeable at the time of contracting.

517 U.S at 64 (internal citations omitted).

Pyrolyx and Zeppelin, both of which are sophisticated commercial entities, entered into a contract, where it was clearly foreseeable to Pyrolyx that litigation in New York would impose many of the burdens that it now alleges in its motion to be unfair or undue. As discussed previously, in light of the significant federal policy upholding forum selection clauses, this favor weighs against abstention.

### iv. The Avoidance of Piecemeal Litigation

"By far the most important factor" in the *Colorado River* abstention analysis is the "clear federal policy . . . [of] avoidance of piecemeal adjudication." *Moses H. Cone*, 460 U.S., at 16

13

(alterations in original) (quoting *Colo. River*, 424 U.S. at 819). This factor is a "paramount consideration" when a failure to abstain may result in "inconsistent disposition[s]" that "would breed additional litigation on assertions of claim and issue preclusion." *Arkwright-Boston Mfrs. Mut. Ins. Co. v. New York*, 762 F.2d 205, 211 (2d Cir. 1985).

Here, the question of how much money is owed to whom, is inextricably linked to the underlying issues in the Indiana Lien Action. That said, "the Supreme Court has held that [the] 'mere potential for conflict in the results of adjudications, does not, without more, warrant staying exercise of federal jurisdiction.'" *Vill. of Westfield v. Welch's*, 170 F.3d 116, 123 (2d Cir. 1999) (quoting *Colo. River*, 424 U.S. at 816). And since "any case involving parallel proceedings presents a risk of duplicative litigation or a rush to judgment, the existence of those risks can weigh only modestly in favor of dismissal; otherwise dismissals pursuant to *Colorado River* would be the rule, not the exception." *In re Asbestos Litig.*, 963 F. Supp. 247, 253 (S.D.N.Y. 1997) (quotation marks omitted).

"[T]he primary context in which we have affirmed *Colorado River* abstention in order to avoid piecemeal adjudication has involved lawsuits that posed a risk of inconsistent outcomes not preventable by principles of res judicata and collateral estoppel." *FaZe Clan, Inc. v. Tenney*, 407 F. Supp. 3d 440, 443 (S.D.N.Y. 2019) (quoting *Woodford*, 239 F.3d at 524). Although the Indiana Lien Action and this action present a risk of duplicative litigation, both proceedings involve the same dispute between the same two parties, so a decision in one proceeding would generally have preclusive effect in the other. Since this significantly reduces any concern about piecemeal litigation, this factor only weighs "modestly in favor" of abstention. *In re Asbestos Litig.*, 963 F. Supp. at 253.

14

v. **The Order in Which Jurisdiction was Obtained**

Although the Indiana Lien Action was filed a few *hours* before this action, for all practical purposes, the two actions were filed at the same time. Moreover, the time-stamp on each complaint is not the decisive factor; rather the relevant inquiry is when each court established jurisdiction and how far each case has actually advanced. *Shields*, 891 F. Supp. 2d at 584-85. Here, neither case has moved past the pleadings stage, because Pyrolyx has filed motions to dismiss in both actions instead of answering.

Given that "abstention [may not] be based simply on an aversion to deciding an issue prior to a state court's adjudication," this factor weighs against abstention. "Each court is free to proceed in its own way and in its own time, without reference to the proceedings in the other court. Whenever a judgment is rendered in one of the courts and pleaded in the other, the effect of that judgment is to be determined by application of the principles of *res adjudicata*." *Kline v. Burke Constr. Co.*, 260 U.S. 226, 230 (1922). Thus, this factor weighs against abstention.

vi. **The Law that Applies the Rule of Decision**

The fact that federal substantive law does not govern this case is of little weight. State law provides the rule of decision in all diversity cases, "only 'in some rare circumstances [may] the presence of state law issues . . . weigh in favor of . . . surrender' of federal jurisdiction." *Giardina v. Fontana*, 733 F.2d at 1047, 1053 (2d Cir. 1984) (quoting *Moses. H. Cone*, 460 U.S. at 26). No such rare circumstances are present in this case. This is not a case where the presence of a "novel state law theory" was a factor in the finding of exceptional circumstances. *Telesco v. Telesco Fuel & Masons' Materials, Inc.*, 765 F.2d 356, 363 (2d Cir. 1985), In contrast, Zeppelin's breach of contract claims presents no novel or unique issues of law.

Furthermore, the parties' contract includes a choice-of-law provision, which designates the law of New York State, rather than Indiana, as the governing law of the contract. (Compl. Ex. 1. ¶¶ 18.1.) The choice-of-law provision further counsels against abstention under this factor, since this Court is more accustomed to applying New York State law than is an Indiana State Court.

### vii. The Adequacy of the State Procedures to Protect Plaintiff's Federal Rights

Although no federal rights are at stake, Plaintiff nevertheless argues that its rights will not be protected in Indiana State Court. Under a judicial sale of Pyrolyx's property, the sale proceeds would be used to satisfy priority creditors first; then, lienors and others with an interest in the property. If those sale proceeds are insufficient, Zeppelin's recovery could be less than the full unpaid balance of the contract. Zeppelin argues that only by pursuing its breach-of-contract claim in this Court, the mandatory venue for breach-of-contract claims, can Zeppelin be made whole for the losses it suffered due to Pyrolyx. However, if this Court were to abstain from exercising jurisdiction Plaintiff will be able to assert all of its claims in Indiana state court.

On the whole, there is no real dispute that the State Court would fail to protect Plaintiff's federal rights. Given the lack of federal rights at stake, however, "the ability of the state court to adequately protect Plaintiff's interests only makes this factor neutral." *Phillips*, 252 F. Supp. 3d at 302-03 (quoting *Dalzell Mgmt. Co. v. Bardonia Plaza*, LLC, 923 F. Supp. 2d 590, 602 (S.D.N.Y. 2013)).

### viii. Disposition of the Action

Here, four of the six factors weigh against abstention, one is neutral, and only the "avoidance of peacemeal litigation" slightly favors abstention. Since the majority of factors favor exerting jurisdiction and there is a "heavy thumb on the retaining-federal-jurisdiction side of the scale,"

undoubtedly *Colorado River* abstention is not appropriate. *Cong. Talcott Corp. v. Roslin*, 1996 WL 499337, at *5 (S.D.N.Y. Sept. 4, 1996).

**IV.     Conclusion**

For the reasons stated above, Pyrolyx's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) is denied. The Clerk of Court is respectfully directed to close Dkt. No. 21. This constitutes the decision and order of the Court.

Dated: March 5, 2019

_____
Chief Judge

BY ECF TO ALL PARTIES